Case No. 15-1274 Orangeburg, South Carolina Petitioner v. FEDERAL ENERGY REPRESENTATIVE COMMISSION Mr. Horwood for the petitioner, Ms. Vasella for the respondent Good morning, I'm James Horwood representing the petitioner of the city of Orangeburg, South Carolina I'd like to reserve five minutes of my time for rebuttal This case involves FERC auditors approving a new wholesale power resource that is unduly discriminatory Duke, Progress and their wholesale customers can and will enjoy this resource But Orangeburg cannot because of the state of North Carolina's control over wholesale sales in which it picks winners and losers Orangeburg has been in the market for a number of years trying to avail itself of FERC's competitive market regime But it's been thwarted by actions by the North Carolina Commission and by FERC's failure or refusal to address Orangeburg's concerns You have a contract right now, correct? Yes And that contract goes until 2023, is that correct? It ends either at the end of 2022 or 2023 Okay, how far in advance does Orangeburg tend to start contracting or looking for a possible new contract? Because I assume you don't do these things at the last minute No, it takes about three years Commissioner Moeller, and for Commissioner Moeller and his dissent on a declaratory order proceeding We had done a pretty good job of outlining what the process is You put out a request for proposals, you get proposals in, you evaluate them, then you sit down and negotiate a contract And that's what happened back starting in 2005 and Orangeburg and Duke entered into a contract in 2008 So that took about three years So how is your interest in a contract possibly with Duke in 2023 ripe for our review now? Or how is your injury imminent now? The joint dispatch agreement, which we're complaining about Accepts effectively the conditions that Duke in progress agreed to with the North Carolina Utilities Commission staff That gives the North Carolina Commission the right to review the contract And it contains within it the indication of who get to be considered native load wholesale customers And Orangeburg's exploded from that definition Native load wholesale customers are all of what's called traditionally served wholesale customers And they're listed, and a glaring omission is Orangeburg But Orangeburg has never been served by Duke or Progress under FERC's market-based rate regime Orangeburg's entitled to buy from whatever willing seller wants to sell to it And the state of North Carolina has taken Duke and Progress off of the table Is Orangeburg paying more for energy right now than it would be if that joint dispatch agreement had been struck down the way that you are requesting? Orangeburg wouldn't be affected right now, but it would be affected at the time it goes into the market We don't know whether Duke or Progress would bid at that time But absent the North Carolina Regulatory Commission's But we know that with the regulatory conditions, they will not bid And we also know that other potential suppliers know that Duke and Progress won't be able to bid Which therefore eliminates the discipline of competitive markets that FERC has provided for in its regime of open access transmission and competitive markets I know that your client is quite frustrated because you sought a declaratory ruling from FERC previously that got dismissed as moot Because of the contract being voluntarily terminated But perhaps your remedy is to, when you begin the process of seeking bids If you don't receive the bids that you believe that you otherwise would Because of the NCUC ruling Then you could initiate a petition at that point with FERC And then if FERC doesn't give you relief, you could come to this court That's kind of fine in theory, but that's not how the market works The important thing from Orangeburg's standpoint is When it goes out to the market, it wants to have as many potential bidders as it can Because that's the way the market is supposed to work And Orangeburg and Duke won't be bidders They have no ability to be bidders when they entered into the agreements to get the merger approved by the NCUC And agreed to the regulatory conditions Among the regulatory conditions they agreed to was something that can properly be called a gag order They don't have the ability to ask a North Carolina commissioner or any other court for relief So they disabled themselves from being able to come in and say we want to be able to serve the market And with those shackles removed, then they could be potential bidders And from Orangeburg's standpoint, what's important is that other potential bidders know that And that eliminates the market discipline And when FERC issued its Order 888, kind of moved from a position of Kind of guaranteed supply for wholesale customers from their traditional resource at regulated rates Which are generally cost-based rates And FERC found that we can have a competitive market and that'll discipline prices And that'll be a better way to deal with these issues than trying to regulate rates And a major part of that was FERC issued its open access transmission requirements To make sure that competitive markets were there Well if this court were to hold that FERC should not have approved the joint dispatch agreement How does that help you? Because won't Duke still be bound by the North Carolina Utility Commission regulations Which are on the books in North Carolina? I think, well I guess what we're asking the court to do is to say that The joint dispatch agreement should not be approved unless The regulatory conditions in North Carolina are changed Because the joint dispatch agreement is subject to those regulatory conditions And we're asking for relief here because this interferes with FERC's jurisdiction The state of North Carolina is trying to regulate wholesale sales I don't think we are in a position to directly review the North Carolina utility regulations You have to challenge those within the North Carolina court system What we can review is a federal commission's action And isn't the most that you could get here is a decision from FERC That would strike out any incorporation of those regulations in the joint dispatch agreement But not, I don't know that FERC can issue an order that makes The North Carolina regulations themselves disappear In this, in the posture of this proceeding Well what the joint dispatch agreement does is it defines Who native load customers are and who are entitled to native load treatment And because of the existence of the North Carolina regulatory commissions Which FERC was informed about by us and others Orangeburg can't be a native load customer But under the whole scheme of interstate regulation, FERC regulation States don't get to determine which wholesale customers are able to get served Or at which rates And that's what is happening here with the state deciding Who get to be considered native load customers It seems that in the, in your argument, in your brief in favor of standing You say that FERC could redress your, that an order from this court Could redress your injury because we could order FERC to do something Akin to what was done in that California Public Utility Commission's case FERC, I'll ask them about this when they stand up here But they don't respond to that in their brief Other than to say that, well we have discretion to act As we did in that California Public Utilities Commission case And if we choose not to exercise that discretion Then basically there's, you know, tough luck I guess this is, but I guess your argument would be that If they're withholding their exercise of discretion is arbitrary and capricious Or is not fulfilling their duty to ensure just and reasonable nondiscriminatory rates Then we can compel them to exercise their discretion Or vacate and remand for them to, you know, exercise their discretion with those things in mind Is that your argument? Well part of the argument is that FERC does not have discretion When it's faced with undue discrimination It's required to deal with undue discrimination which is presented to it And we believe that that's the case here And FERC said it's exercising its discretion It says that in its briefs But in FERC's order it didn't say it was exercising its discretion It said it need not reach Orangeburg's other arguments Because it's interpreted Order 2000 in a way that we think is not permissible And goes well beyond what was intended in Order 2000 FERC in its decision dealing with the Joint Dispatch Agreement Said that states can determine who's entitled to native law treatment as states always have That statement by itself, which is an isolated statement Doesn't make any sense when Order 2000 is read Because the whole purpose of Order 2000 and Order 888 Was to eliminate the barriers in who gets to serve in wholesale markets You don't get rid of wholesale markets by saying Well gee, you can sell to anybody you want So long as it's within your existing area Well the Commission said there in Order 2000 The Commission made that statement and said as it always has What did it mean by that? What had it always allowed before with respect to authority to require State Utility Commission's authority to direct lease cost sales to native customers? Well first we don't think that's a correct statement But if it is a correct statement, and we're not challenging it It's only a correct statement as it applies to retail customers Not to wholesale customers In Order 2000 they weren't talking about wholesale customers They were talking in terms of retail customers And states have never lawfully regulated wholesale sales Not at least since the Attleboro decision in 1927 Which gave rise to Part II of the Federal Power Act This reading of Order 2000 as justifying North Carolina control Of due to progress wholesale sales Contradicts Supreme Court decisions in the New England Power case And Dana Hale, the New England Power case was one where the State of New Hampshire said We're going to keep our low cost power within the State of New Hampshire And you can't sell it outside the State Supreme Court ruled that that violates Commerce Clause And it's a state regulating interstate commerce Which is what's involved here Quite simply, we don't think that states get to pick winners and losers At wholesale, and this is particularly true Once you move to a market based rate regime Which said that the incumbent utility The one whose control area or balancing area a customer is located in Doesn't have to continue to serve that customer anymore But in return for that We are going to make sure that we eliminate these kind of geographic barriers So nothing in Order 2000 speaks to what North Carolina is doing here Now what the Federal Power Act says is that rates cannot be unduly discriminatory It sounds like they can be duly discriminatory, and that's okay So what is unduly discriminatory about a state deciding that Look, for our native load folks They've borne the cost of building up this system within our state Taxpayer dollars have been used They're going to get the least cost And if someone new wants to come in, that's fine But those newcomers are going to have to bear the cost Of the new energy that they're getting They're just having to pay for what they're getting They're going to have to pay their fair share What's unduly discriminatory about that? Because states don't get to regulate the wholesale rates That's the Commerce Clause This is interstate commerce And we're dealing with, in effect, the Dorman Commerce Clause Which says if you don't get to regulate at state level What is regulated at the federal level How did the New England case get to the Supreme Court? Um, New England Power Company Which was effectively prevented from being able to By the State Commission Use its resources By the State of New Hampshire, yes Right, but the proceeding that took place was As I remember, New England then appealed to the Supreme Court of New Hampshire, was it? Right, so the case came up in a challenge to a state regulatory body A judicial challenge, but in the state courts Not through FERC Well that's right, that was not a FERC case It was not a FERC case Which raises a question in my mind Did you appeal the North Carolina Utility Commission's Appeal to the North Carolina Courts? Yes, we did appeal it and were told that our appeal was moot Because the contract we were complaining about no longer existed And then the North Carolina Court of Appeals said And you have other places you can get this resolved You can file at FERC for declaratory relief, as you have You can file in district court for mandamus Which may have been something possible at that time But not since the Supreme Court's Armstrong decision They said well you can go other places They didn't rule that what the North Carolina Commission had done Was a proper interpretation of the Federal Power Act Or was permissible They just said that you're too late We're kind of faced with arguments here that You're too late because you no longer have a contract Or you're too early because you don't have a contract Or you're not in the right place Instead of being before the North Carolina Courts You should be before a Federal Commission Or before Federal Courts Or we're now told by FERC That when we filed our declaratory relief petition That sat for six years Because FERC couldn't get a majority to consider the case Well, gee, now you're too late Because the contract doesn't exist in its moot The only body that's ever addressed our arguments On what's permissible for states to do And native load customers Was the North Carolina Commission No court has addressed it Except possibly in this joint dispatch agreement Where kind of the off-handed said Well, what the state of North Carolina is doing is okay So you exhausted your state remedies Is that what you're talking about? Yes So you went to the North Carolina Court of Appeals Did you go to the North Carolina Supreme Court? I don't remember whether we did I think we decided that Since the ground for dismissal was mootness And effectively it was moot at that time In terms of that particular proceeding And we had other proceedings that we were pursuing So, you know, FERC talks about That Orangeburg engaged in a multi-litigation strategy Well, Orangeburg, in all the litigation we've been involved in Which has been a lot Has never made arguments that are inconsistent It's always the same argument And we can't get anybody to sit down And address the merits of our argument That what the state of North Carolina is doing here Is an improper interference with interstate commerce All right, thank you very much Okay I don't know if I have any time left We'll give you a couple of minutes Okay, thank you Good morning, Your Honors Beth Pescella for FERC I'll start off with standing As Judge Wilkins was saying Really, it's certainly indicating That the remedy here for Orangeburg's frustration Is to, next time it gets a contract If it's not happy with the contract That's when it needs to litigate it Orangeburg voluntarily did withdraw from this contract Well, hang on They say we're not going to be able To get the competition for contracts that we want As long as there's this albatross hanging around Duke's net Called the North Carolina Regulatory Conditions So we're not even going to be able to get it First of all, let me just say that Orangeburg's counsel is not correct About saying that Duke and Progress Will not be able to bid They will be able to bid Even the North Carolina Commission's own order said Duke can bid It just does it at the risk that possibly Oh, you can bid, but you're going to have to eat the costs Right, that's right Well, no, they're not going to bid Why on earth would they engage in a futile exercise like that? It kablooied everything the first time around Why would they go back for another round? Your Honor, I think that Judge Wilkins' point there was And what he was saying is That if they don't receive bids Be careful trying to interpret what my point is No, no, no, that's right And that's what I'm saying I think I understood But what I heard, what I got from you And it was what I was thinking myself And I would have said on my own So I'll stop saying it As you say it, Your Honor I'll just say it myself My point is What I would have said on my own is That when it comes time To try to negotiate a new contract If Orangeburg determines that People are bidding at incremental At average cost rates And only at incremental rates Then that's the time That they would have standing To challenge What are they challenging? They'd be challenging The North Carolina Commission rules In North Carolina court? They would challenge it And they're going to go there And they're going to say We see we don't have bids Are they going to show that Someone would have bid but for? Well, they can Yeah, I think that they would be able to show that I think they would be able to show that For sure If Duke is offering that service To others but not to them If that service exists I think that the case law does support That they would be able to challenge that At that time I do How are they going to show Duke wants to do it? Maybe Duke just doesn't want To have a contract with them Maybe Duke has got plenty Of other contracts at the time Or for whatever reason Isn't interested in taking Well, that doesn't mean That they're standing here though Your Honor What the joint dispatch agreement did here Was approve something that has nothing It literally has no effect As your honors were asking questions It was apparent you were I think understanding that Even if the court did say to the commission You can't approve the joint dispatch agreement As it is It still wouldn't affect Orangeburg For many, many years to come The joint dispatch agreement Why wouldn't it? I mean, why couldn't the Why couldn't FERC have done Something like it did In the California Public Utilities Commission California Public Utilities Commission case This was a case where The California Commission came to Came to FERC for a declaratory order Saying we want to require That specific rates are In wholesale contracts We want to require that And that's not the situation At all I hear So that's classic preempted A state cannot set rates At FERC wholesale rates That's not what's occurred here I understand that's not What's occurred here But the question is FERC has the authority Obviously to determine Whether a state utilities Commission's action Is unduly discriminatory Or is preempted Sure Absolutely, your honor And where did FERC Exercise its discretion Or make that judgment here? What As the The commission pointed Specifically to order 2000 But And where the commission said Where there's no retail choice Which is in North Carolina A state commission has And always had the authority To require a utility To sell its lowest cost power To native load Native load Does include Wholesale and retail Not just Not just retail as In state wholesale In I'm sorry, your honor In state wholesale Yes, you're not saying Interstate wholesale No, I'm saying Wholesale as well And that's because In order 888 I'm sorry This little statement here means That they have the authority To set interstate wholesale rates No, they have the authority To require that Bundled retail But bundled Because in states Where there's no retail choice The transmission and the sale Are looped together So even a wholesale sale That uses retail That's bundled with If it's bundled together Then the Excuse me Let me start over In 888 What the commission said Let me see If it helps Let me start where In 888 Which was the open access rulemaking FERC said that it would No longer impose A regulatory A FERC regulatory obligation On wholesale requirement suppliers To continue to serve Their existing requirements customers Which includes retail And wholesale customers Beyond the end of the contract term I just want to be crystal clear When you say They were addressing Both retail I get And wholesale You can have in-state Wholesale contracts And interstate Wholesale contracts You can have wholesale Service that's provided As part of a bundled Bundled Transmission There wasn't How do we know They were talking about Interstate wholesale rates In that sentence You just read to me I'm sorry Your Honor How do we know We were talking about Interstate wholesale rates In that sentence You just read to me As opposed to I'll say The whole point of 888 is Was to have open access And FERC chose not to Chose only to Remove its own Regulatory requirement That people continue to serve Their existing customers And said And changed And said But we will not Also Take jurisdiction over The Contractually imposed Contractually imposed So we won't Regulatory We won't take jurisdiction Which sounds like something That isn't already Their jurisdiction And of course That couldn't possibly be Interstate wholesale rates Which isn't I guess I'm not getting I guess I'm not getting What your point is Your Honor By bringing that up I'm trying to understand What that language is I mean if it actually means That FERC is saying It's fine I'll just say it on the line If that is interpreted As meaning I'm reading from Order 2000 Here That where there is No retail choice Our final rule Does not affect A state commission's authority To require a utility To sell its lowest cost Powered native load As it always has That's a sentence And that just says States you can do it You're going to do With something that's Quite in your wheelhouse State and state retail rates Whereas that's now Interpreted to mean Actually That cedes To state utility commissions The power To authorize Interstate Wholesale Rates No that's not No absolutely No that's not what it is The FERC still will set the rate But what And let me point out this That no Native load Customers Does include both Wholesale and retail customers For whom the supplier Has an obligation to plan And operate their system And that's what The commission didn't Didn't set aside In Order 888 It said we're only requiring Open access For wholesale sales Where there is Retail competition There's no retail competition In North Carolina Therefore there's no Requirement that there be Open access In North Carolina And that's That's 888 Then in Order 2000 Which built on 888 And that's That's That's New York Versus FERC Your Honor The Court Supreme Court there In reviewing Order 888 Said FERC is perfectly fine Not requiring That wholesale sales Have That Wholesale Bundled Bundled States That It also Require open access Where there's no Retail Where there's no Retail options In states like North Carolina That's New York Versus FERC Can we Can we get Back to standing For a second Sure So If it Takes the Commission Six years To decide On one of these Contracts Isn't now Exactly the Right time For them To bring This challenge Is there any Question about Eminence or Rightness Given that Apparently it Takes FERC Six years So if they Want to Start contracting Now they have To build in Six years Lead time To seeking These contracts They may even Be too late I mean They got to Go back Six years From 2022          All And And there are additional cases in which the Commission has said the same thing about that where there's no retail choice the final rule doesn't affect the state commission's authority to require utility to do this. New PJM companies and 105 FERC 61251, they reiterated the holding in order 2000, but earlier than these orders. I mean earlier than that in, excuse me, after that San Diego Gas and Electric, which is a California energy crisis proceeding at FERC, the Commission said we recognize load serving entities use their lowest cost resources to serve native load and points out that over the course of the proceeding parties had pointed that out since August 2001. This is longstanding. It's just a given at FERC that this is okay for states without retail choice like North Carolina to require this. So even if it affects customers in another state like South Carolina? Yes, yes, yeah. I mean, I don't know why I thought so hard of it. Absolutely. Because again, open access requirements only apply, it only, in order 808, FERC only took  So it took that away, but it said contracts can continue to do that. So for example, the joint dispatch agreement is a really good example of that. Well, wait, just to be clear, a contract saying it's fine for you to give them, these native load folks, the lowest cost, is that the same thing as saying it's fine and FERC washes its hands of it for you also, as a consequence of that, to charge higher rates for wholesale interstate contracts? So is that necessarily included in that other statement? I believe that it is, but it certainly is here because FERC found Has the commission ever said that? The commission, in this circumstance, the commission did, because the commission found the joint dispatch agreement rates to be just and reasonable. It made three rulings that are pertinent here. One is that the joint dispatch agreement rates are just and reasonable. So FERC itself has determined that providing, deeming these lower cost, deeming the lower cost energy to go to native load, that is just and reasonable. FERC found that here. No, that's different from saying that, let me see, fine, give them the least cost. But does that mean that you can also, again, FERC is washing its hands of it. We're not going to stop you from charging a higher rate. Maybe you have to give higher rate to interstate ones. Maybe you have to give that same rate. This case is not about charging anybody rates. This case is just about deeming that certain energy is served to certain entities. Well, I'm trying to clarify whether when it talked about the traditional authority on Hang on, hang on. Once you start talking about an interstate wholesale rate, that's exclusive FERC jurisdiction. It can't give that away. Did they address that? FERC, well, I mean, FERC has been doing this. FERC just sees this as not contradictory to the Federal Power Act and not a problem. Look, FERC is not. Because? Because it thinks it's fine, but it's being respectful of state rights and state rights. It can't be respectful in the sense of I'm ceding to states the power to regulate interstate. And it's not doing that. I'm just not understanding how it's stopping that part. And the contract rate, the 2008 contract rate, FERC reviewed that rate. I mean, it's a FERC. If it's an interstate rate, it's a FERC rate. But FERC is not going to require that it be done in an open access way. And that's really what's happening here. Let me just see if I can understand your position and how this works. It's one thing for the North Carolina Utility Commission to say that Duke and other energy providers can charge the lowest rate to the native load customers in North Carolina and then charge a higher rate to non-native load customers in North Carolina. It seems to me it's a horse of a different color, so to speak, for North Carolina Utility Commission to say to Duke, this is how you can treat native load customers in South Carolina and non-native load customers in South Carolina. I think I understand what you're saying, Your Honor. And FERC, in Order 888, was saying, and Order 2000, and again, Order 2000 built on Order 888, was saying that that's okay. It is okay for, in this special circumstance, where there's bundled retail native load, where there's not unbundling in a state, and it's a state's right to choose whether to unbundle or not, and the Supreme Court blessed that determination by FERC, that it did not have to require unbundling so that it could get a handle on the wholesale portion of the bundled sale. In that circumstance, this is not a problem. Open access, FERC is not going to regulatory require people to continue to serve, and that made open access, and that's what 888 was all about. So can you give me an example where an agreement like the present one at issue has been blessed by FERC so that I can feel more comfortable with that proposition? Sure, Your Honor. In Nevada Power 145 FERC 61238 in 2013, the Commission approved a joint dispatch agreement, sounds very much like this one, under which the lowest cost resources for the two companies would be deemed to have provided service for each other's native load, so just like here. In PJM Interconnection 134 FERC 61048 in 2011, the Commission says it's just reasonable for PJM, Carolina's joint operating agreement, to exclude hydro-nuclear, which were the lower cost energy, because the state had said that you need to serve your native load with that energy, so they kept it out of... Would you define native load for me? Sure. Yes, Your Honor. Native load, as the Commission explains in the brief, is an industry term that generally refers to a utility's existing customers whose power needs the utility is bound by franchise or contract to meet. Okay, it's not geographic, then? No, it's not, Your Honor. Do you know whether Duke had any other customers outside of the boundaries of North Carolina that qualified as native load? Duke and Progress both have, my understanding, certainly one of them at least has some in portions of South Carolina, mostly in North Carolina. So their franchised regions include portions outside of the state. And native load customers includes both wholesale and retail customers for whom a supplier has an obligation to plan and operate a system, and that's right in the Commission's regulations, 18 CFR section 33.3D4I. And in Order 2000, the Commission recognized that as well, that it includes both wholesale and retail. And that's just, it's an odd, weird, quirky thing, but that's not odd or weird to FERC people. Everybody kind of just knows that. All right, thank you very much. Thank you. All right, Mr. Horwood, we'll give you two minutes. He has no time left, right? Yeah, we'll give you two minutes. As to that last point, Orangeburg, I'm sorry, Duke and Progress do serve in both North Carolina and South Carolina, but the native load customers are those within their balancing area or control area, the historic ones. Ms. Pacella talked a lot about Order 88, but you talk in terms of retail choice, not in terms of wholesale sales. Order 88 provides for a nationwide competitive market. And what is happening here is that's being limited by the boundaries that FERC has allowed the State Commission to address. Duke, which bid for the contract, has an open access transmission tariff. Duke has market-based rates. Market-based rates are whatever a willing buyer and seller negotiate. We're dealing with bilateral contracts. Duke negotiated a contract with average system costs. What the North Carolina Commission did is they said the filed FERC rate, which is the contract rate that Duke and Orangeburg negotiated, won't be honored. This kind of gets back to the Nantahala case of the Supreme Court, where the North Carolina Commission, dealing with two subsidiaries of Alcoa, said we're going to assume that the costs of these two subsidiaries are combined rather than treating them separately, as FERC has done. And the Supreme Court overturned the State of North Carolina. They were saying, you know, North Carolina has to negotiate. But their FERC had approved a specific rate, and the consequences of what North Carolina did was to say, no, no, no, that's not going to be the rate here. FERC has actually approved, there's no conflict, FERC has approved the same rate that's consistent with North Carolina regulations. That's right, but what FERC has approved is a rate that is unduly discriminatory. And FERC has the obligation... How do we know it's unduly discriminatory if, I think, their theory is that, no, we allow this little bit of discrimination as part of this, for states that have no retail choice, and these obligations, we allow them to have this special treatment for late-of-load customers because they're in a different situation. And so, maybe you can call it discriminatory, but it's not unduly discriminatory under 888 and 2000. Can you answer that? That arguably would apply if we're talking about retail customers. But the question of whether wholesale rates are unduly discriminatory is something for FERC to determine, not for the states to determine. And that's what FERC has the duty to remedy here, and it's not enough for FERC to say that, well, these are unduly discriminatory because we're going to let the states decide. The states don't get to decide at wholesale. They may get to decide at retail, but certainly not at wholesale. Now, what you've seen with FERC's argument here is what Orangeburg has been faced with. We're never at the right time and at the right place. It's kind of fatuous to say that Orangeburg could have preserved its rights by not terminating the contract and agreeing to pay a 30% higher rate from Duke while it continued to litigate here. That's not a real choice for Orangeburg, which has to serve its retail customers and has its residential customers and wants to serve industrial customers. I think we understand your argument. Thank you very much for your time. The case is submitted.
judges: Millett, Wilkins, Randolph